**FILED & ENTERED**

**JUN 14 2023**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** cargill    **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>Shu-Chen Wu<br>Geogiang Yue<br><br>                    Debtor(s). | Case No.: 6:22-bk-14173-RB<br><br>CHAPTER 13<br><br>**NOTICE OF TENTATIVE RULING RE MOTION TO AVOID LIEN UNDER 11 U.S.C. § 522(f)**<br><br>Date:        May 17, 2023<br>Time:       11:00 a.m.<br>Courtroom: 303 |

    At the above date and time, the Court held a hearing on the Motion to Avoid Lien under § 522(f) (the "Motion"), filed by Debtors. Appearances are as noted on the record for the hearing. At the hearing, the Court adopted its tentative ruling on the Motion. A copy of the Court's tentative ruling is attached to this cover page.

//
//
//
//

-1-

**Procedural Background**

*State Court Proceeding*

Before this bankruptcy filing, Judgment Creditor Emilio Ceron ("Ceron") filed a lawsuit in state court against Debtors Shu-Chen Wu and Geogiang Yue ("Debtors") to recover a deposit of $25,000 from Debtors. On November 4, 2021, a judgment in favor of Ceron was entered after a trial was held. On February 1, 2021, an amended judgment was entered against Debtors in the amount of $78,987.52.[1] On January 10, 2022, Ceron recorded an Abstract of Judgment in County of Riverside.

*Bankruptcy Court Proceeding*

On November 2, 2022, Debtors filed this chapter 13 bankruptcy case. Debtors listed the real property located at 7907 Horizon View Drive, Riverside, CA 92506 ("Subject Property") and valued at $1,300,000.00 in Schedule A/B of the chapter 13 schedules. Debtors also claimed a homestead exemption of $560,000.00 under § 704.730 of California Code of Civil Procedure in Schedule C of the chapter 13 schedules.

*Motion to Avoid Judicial Lien*

On December 22, 2022, Debtors filed this instant motion ("Motion") to avoid a judicial lien held by Ceron. Dkt. 22. On January 11, 2023, Ceron filed an opposition ("Opposition") to the Motion. Dkt. 25. In the Opposition, Ceron asserts that:

1) the homestead should be capped at $187,000[2] under Section 522(p)(1) because Debtors acquired current title to the Subject Property within 1215 days before filing this bankruptcy petition; and
2) Debtors' appraisal report included properties which are not truly comparables and requests that the Motion be continued for an evidentiary hearing and for access to the Subject Property for a full appraisal.

On February 15, 2023, Debtors filed a reply ("Reply"). Dkt. 32. In the Reply, Debtors argue that § 522(p) is not applicable to this case. Specifically, Debtors cited the case *Caldwell v. Nelson* (*In re Caldwell*), 545 B.R. 605 (B.A.P. 9th Cir. 2016), in which the BAP held that § 522(p) did not apply when the debtor had retained beneficial and equitable title to the property despite the transfers within 1,215 days of
the filing of the petition noting the following:

1) debtor had continuously resided in the property with his wife, and
2) debtor paid the mortgage, taxes, and insurance on the property.

Further, Debtors provided the Court with an appraisal of the property valued at **1,300,000**. Dkt. 22. In the Opposition, Ceron's counsel set forth issues with the appraisal. In the Reply, Debtors contend that neither Ceron nor his attorney are qualified to give critiques of the appraisal. Dkt. 32. Thus, Debtors request the Court grant the Motion.

---

[1] The judgment has been partial satisfied with an amount of $24,445 being paid to Ceron.
[2] The current amount should be $189,050 after annual inflation adjustment.

On February 22, 2023, a hearing was held on the Motion. At that hearing, the Court decided to continue the hearing to allow Debtors to file a supplemental brief to demonstrate Debtor is entitled to claim homestead exemption under California law. Further, the Court granted Ceron's request to access the Subject Property to conduct a full appraisal of the Subject Property.

On April 12, 2023, Debtors filed a supplemental brief ("Supplemental Brief") and the declaration of Shu-Chen Wu ("Wu Declaration") in support of the Motion. Dkt. 42. In the Supplemental Brief and Wu Declaration, Debtors set forth a timeline of various transactions concerning the Subject Property and contend that Debtors are entitled to homestead exemption against the Subject Property under C.C.P. §704.730 for the following reasons:

(1) Debtors' petition was filed on November 2, 2022. Therefore, the 1,215-day period began on July 6, 2019. The Subject Property was purchased on February 19, 2013, and the title to the Subject Property has been continuously held either by the Debtors, their Family Trust, or their wholly owned corporations.

(2) Debtors resided at the Subject Property on the date Ceron's lien was attached, and they have lived in the Subject Property continuously to this day.

*Evidentiary Objections*

On April 24, 2023, Ceron filed an evidentiary objection to paragraphs 11 and 12 of Wu Declaration on the grounds of "vague" and "lack foundation." See Dkt. 43. Ceron requests the Court to strike that portion of testimony. See Dkt. 43.

*Stipulation to Continue Hearing*

On April 28, 2023, the parties filed a stipulation to continue the hearing on the Motion. Dkt. 44. On May 1, 2023, the Court approved the stipulation. Dkt. 45. Accordingly, the hearing on the Motion was continued to May 17, 2023. To date, neither party has filed any further brief on this matter.

**Legal Analysis**

The Court will be examining the following legal issues:

(1) whether the homestead exemption claimed by Debtors should be capped at $189,050 under Section 522(p)(1);

(2) the value of the Subject Property; and

(3) Plaintiff's evidentiary Objections to certain testimony in Debtor Shu-Chen Wu's Declaration.

### A. Homestead Exemption and Applicability of Section 522(p)(1) to this Case

Section 522(p)(1) imposes a limitation on the homestead exemption a debtor can claim regardless of the applicable state law exemptions. *Caldwell v. Nelson* (*In re Caldwell*), 545 B.R. 605, 609 (B.A.P. 9th Cir. 2016) ("*Caldwell*").

*Statutory Language of 11 U.S.C. § 522(p)(1)*

Section 522(p)(1) provides in relevant part:

> Except as provided in paragraph (2) of this subsection and sections 544 and 548, as a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215–day period preceding the date of the filing of the petition that exceeds in the aggregate $155,675 in value in—
> (A) real or personal property that the debtor or a dependent of the debtor uses as a residence;....

11 U.S.C. § 522(p)(1).

*Legislative Purpose of 11 U.S.C. § 522(p)*

The legislative purpose of Section 522(p) was to "address the well-documented and often-expressed concern by members of Congress about the so-called 'mansion loophole' by which wealthy individuals could shield millions of dollars from creditors by filing bankruptcy after converting nonexempt assets into expensive and exempt homesteads in one of the handful of states that have unlimited homestead exemptions ...." *In re Greene*, 583 F.3d 614, 619 (9th Cir. 2009) ("*Greene*") (citing *In re Kane*, 336 B.R. 477, 481–82 (Bankr. D. Nev. 2006)); *see also Kane v. Zions Bancorporation, N.A.*, 2022 U.S. Dist. LEXIS 177905 at *18 (N.D. Cal. Sep. 29, 2022). The National Bankruptcy Review Commission in a report issued in 1997 stated that "In deferring to state law exemptions, the current system ... multiplies the opportunities for forum shopping and prebankruptcy asset conversion. ..." *Id.* (quoting Nat'l. Bankr.Rev. Comm'n, Bankruptcy: The Next Twenty Years, National Bankruptcy Review Commission Final Report, Oct. 20, 1997, at 124) (internal citation cleaned up).

The Ninth Circuit has held that "it appears that Congress intended 'acquire' under section 522(p)(1) to mean 'gaining possession or control' by purchasing or gaining an ownership interest, either legal or equitable." *Kane v. Zions Bancorporation, N.A.*, 2022 U.S. Dist. LEXIS 177905 at *24-25 (citing *Greene*, 583 F.3d at 623); *see also In re Fontaine*, 2010 Bankr. LEXIS 5049, 2010 WL 6259993, at *10 (9th Cir. BAP 2010) ("A legal or equitable interest in the property must exist for a homestead exemption to attach to that property.").

*Legal Analysis of 11 U.S.C. § 522(p)(1) & Cal. Civ. Proc. Code, § 704*

In *Caldwell*, the records showed that the debtor and his spouse purchased real property located in Las Vegas, Nevada, and they continuously resided in that property since they purchased it. *Caldwell*, 545 B.R. at 607. They made all mortgage payments, paid taxes, maintained insurance and assumed all other responsibilities of a real property owner. *Id.* Until the bankruptcy filing,

they transferred title to that property seven times to and from their trust and an LCC. *Id.* These transfers were for no consideration and, per the debtor's declaration, for estate planning purposes. *Id.* The last time title to property was transferred from the LLC to the trust was 1,061 days before Debtor filed bankruptcy under Chapter 7. *Id.*

The Bankruptcy Appellate Panel in *Caldwell* held that the limitation of § 522(p)(1) was not applicable despite the fact that the legal title to the property was transferred from the LLC to the trust during the 1215–day period preceding the date of the bankruptcy filing. Specifically, the *Caldwell* court looked to Nevada law and found that the debtor held an interest in the property that would support a homestead claim (despite the fact title was held in the LLC) by noting that the debtor was in continual possession of the house since its acquisition roughly 20 years earlier and met Nevada law's possession and occupancy requirements for a "householder" since he "retained all indicia of ownership by his possession and use of the property, along with the payment of the mortgage, taxes, and insurance." *Id.*

As in *Caldwell*, the Court now looks to California law to determine whether Debtors retained a sufficient interest in the Subject Property to support a homestead claim, while the title to the Subject Property was held by Global Investments, Inc.

Under California law, a homestead is "the principal dwelling (1) in which the judgment debtor ... resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor ... resided continuously thereafter until the date of the court determination that the dwelling is a homestead." Cal. Civ. Proc. Code, § 704.710(a) and (c). California state courts adopt a liberal construction of the homestead exemption law and facts to promote the beneficial purposes of the homestead legislation to benefit the debtor. *Amin v. Khazindar*, 112 Cal. App. 4th 582, 588 (2003); *Tarlesson v. Broadway Foreclosure Investments, LLC*, 184 Cal. App. 4th 931, 936 (2010) ("*Tarlesson*").

"Exemptions serve to protect and foster a debtor's fresh start from bankruptcy." *In re Gilman*, 608 B.R. 714, 721 (Bankr. C.D. Cal. 2019) (citing *In re Rolland*, 317 B.R. 402, 412-13 (Bankr. C.D. Cal. 2004)). "Exemption rights are determined as of the date of the bankruptcy petition." *Id.* (citing *In re Combs*, 166 B.R. 417, 418 (Bankr. N.D. Cal. 1994) (internal citation cleaned up).

Notably, a homestead right in California does not require the judgment debtor own legal title to the property. *Tarlesson*, 184 Cal. App. 4th at 937 (the court held that the debtor had homestead right when the home had been the debtor's principal residence for over 20 years and the debtor continued to live in the home for a period of nine (9) months after she conveyed title of the home to another.); *see also In re Moffat*, 107 B.R. 255, 260 (Bankr. C.D. Cal. 1989), *aff'd*, 119 B.R. 201 (B.A.P. 9th Cir. 1990), *aff'd*, 959 F.2d 740 (9th Cir. 1992) (the court found that the debtor was entitled to homestead exemption when the homestead property was transferred to a revocable trust where the debtor continued to reside on the property); *see also Spencer v. Geissman*, 37 Cal. 96 (1869) (a lesser interest in the property can be a naked possession.).

Accordingly, "California law rejects [the] argument that title to the property is necessary to claim a homestead exemption." *Kane v. Zions Bancorporation, N.A.*, 2022 U.S. Dist. LEXIS 177905 at *26 (citations omitted); *see also In re Elliott*, 523 B.R. 188, 196 (9th Cir. BAP 2014) ("Thus, based on the plain language of the statute, the automatic homestead exemption does not require that the judgment debtor continuously own the property."). The factors a court should consider in

determining whether the debtor has sufficient residency to establish an exemptible interest in the property and, thus, to qualify for the automatic homestead, are physical occupancy of the property and the intention with which the property is occupied." *Kane v. Zions Bancorporation, N.A.*, 2022 U.S. Dist. LEXIS 177905 at *26 (citing *Elliott*, 523 B.R. at 196).

In this case, the facts indicate Debtors are entitled to homestead exemption under Section 704.710(c). Debtors began residing in the Subject Property from October 20, 2020 as their principal dwelling and have continuously resided in the Subject Property since that date. As such, it meets both statutory requirements set forth in Section 704.710 since the facts indicate that:

> (1) Debtors resided in the Subject Property at the time Ceron's judgment lien created and attached to the Subject Property, and
> (2) Debtors have continuously resided in the Subject Property thereafter.

The question here is whether Debtors' homestead exemption claim should be capped under Section 522(p)(1).

As stated above, California state courts adopt a liberal construction of the homestead exemption law and facts to promote the beneficial purposes of the homestead legislation to benefit the debtor. As in *Caldwell*, the court looked to Nevada law and found that the debtor held an interest in the property that would support a homestead claim despite the fact title was held in the LLC, and then concluded that the limitation of § 522(p)(1) was not applicable despite the fact that the legal title to the property was transferred from the LLC to the trust during the 1215–day period preceding the date of the bankruptcy filing.

Here, after examining California law, the Court finds that Debtors are eligible to claim homestead exemption while the title to the Subject Property was transferred to and held by Global Investments, Inc. Although Global Investments, Inc. was holding the legal title to the Subject Property, Debtors had possession of and continued to reside in the Subject Property. Accordingly, Debtors held sufficient equitable interest in the Subject Property that would support a homestead claim under California law. *See Spencer v. Geissman*, 37 Cal. 96 (1869) (a lesser interest in the property can be a naked possession.) As such, the same conclusion as *Caldwell* can be reached—that is, Section 522(p)(1) should not apply.

In conclusion, the monetary cap in Section 522(p)(1) does not apply to Debtors' claimed homestead exemption on the Subject Property.

### B. Valuation of the Subject Property

At the hearing held on February 22, 2023, the Court granted Ceron's request to access the Subject Property to conduct a full appraisal of the Subject Property. To date, Ceron has not submitted an appraisal report to the Court as to the value of the Subject Property. In the Opposition, Ceron's counsel argues that he believes the appraisal is not accurate. Dkt. 25. However, neither Ceron nor Ceron's counsel have submitted an appraisal report indicating the Subject Property is worth $1,700,000 to $1,850,000—a value much higher than the 1,300,000 value in the appraisal submitted to the Court by Debtors attached to this instant Motion. Dkt. 25. & Dkt. 22.

Thus, for the purpose of this Motion, the Court is persuaded based on the evidence and testimony provided to the Court thus far that the value of the Subject Property is $1,300,000.00.

Since Debtors' homestead exemption claim is not capped by Section 522(p)(1), Ceron's judgment lien in the amount of $59,836.36 impairs Debtors' homestead exemption. Therefore, Ceron's judgment lien can be avoided under Section 522(f)(2), and thus, the Court is inclined to grant the Motion.

### C. Evidentiary Objections

On April 24, 2023, Ceron filed an evidentiary objection to paragraphs 11 and 12 of Wu Declaration and requests the Court to strike that portion of testimony. Dkt. 43. Each objection is discussed separately.

    a. Objection to page 7, ¶11, lines 10-12

Ceron objects to this testimony on the three grounds: (1) vague, (2) lack of foundation, and (3) call for expert testimony.

*1. Vagueness*

Ceron argues that Declarant does not say what "tax advantages" she is talking about. The Court is inclined to overrule this vagueness objection because Ceron fails to provide supporting legal authority for this objection. Further, this vagueness objection calls for further clarification from Debtor Shu-Chen Wu, rather than striking this testimony.

Thus, the Court is inclined to overrule this vagueness objection.

*2. Lack of foundation*

Under Federal Rule of Evidence 602, except for expert opinion testimony, witnesses must have personal knowledge concerning the subject matter about which they are testifying—i.e., the ability to presently recall a past perception or impression derived from the exercise of their own senses. See Federal Rule of Evidence 602. A witness' personal knowledge may be established by their own testimony, as well as other evidence. *Id.*

Here, Ceron objects to this testimony on the ground of lack of foundation under Federal Rule of Evidence 602. This is not persuasive. Debtor Shu-Chen Wu has provided sufficient testimony to establish her personal knowledge. Debtor Shu-Chen Wu in her declaration has demonstrated that she purchased the Property and personally executed all the transfers of the Property, including the transfer mentioned in paragraph 11. Thus, the Court finds that Debtor Shu-Chen Wu has established that she has personal knowledge of the matters stated in paragraph 11 by her own testimony.

Therefore, the Court is inclined to overrule this lack of foundation objection.

### 3. Calls for expert testimony

Federal Rule of Evidence 701 provides that:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Federal Rule of Evidence 701. Lay testimony was limited to "facts"—i.e., those things the witness "had seen, heard, felt, smelled, tasted, or done." *See Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Engineering*, 57 F.3d 1190, 1194 (3rd Cir. 1995). Lay opinion testimony can be based on the witness' "knowledge and participation in the day-to-day affairs of his [or her] business." See *United States v. Anderskow*, 88 F.3d 245, 250 (3rd Cir. 1996) (witness' weekly correspondence by telephone and fax provided sufficient first-hand knowledge to give lay opinion on lost profits.) Another example is that homeowners are usually allowed to give lay opinion of their homes.

Here, Ceron argues that it calls for expert witness as to Debtor Shu-Chen Wu's testimony regarding "certain tax breaks." This is unpersuasive. Debtor Shu-Chen Wu's testimony has established that she involved in the affairs relating to the Property, e.g., the purchase and transfers, and the establishment of the entity, Global Investments, Inc, which provided her sufficient first-hand knowledge to give lay opinion on the reason causing the transfer mentioned in paragraph 11. It appears that Ceron's real concern is the credibility of this testimony.

On the other hand, the Court finds that the testimony that "[i]n order to take advantage of certain tax breaks" does not meet the requirement under Federal Rule of Evidence 701(b)—lay opinion testimony is admissible only if "helpful to clearly understanding the witness's testimony or to determining a fact in issue." See Federal Rule of Evidence 701(b). Specifically, the underlying reason for executing the said transfer has no bearing as to determining the issues in this proceeding.

Thus, the Court is inclined to strike the following testimony: "[i]n order to take advantage of certain tax breaks" from paragraph 11.

### b. Objection to page 7, ¶12, lines 12-16

Ceron objects to this testimony on the two grounds: (1) lack of foundation, and (2) vague.

### 1. Lack of foundation

Under Federal Rule of Evidence 602, except for expert opinion testimony, witnesses must have personal knowledge concerning the subject matter about which they are testifying—i.e., the ability to presently recall a past perception or impression derived from the exercise of their own

senses. See Federal Rule of Evidence 602. A witness' personal knowledge may be established by their own testimony, as well as other evidence. *Id.*

Here, Ceron objects to this testimony on the ground of lack of foundation under Federal Rule of Evidence 602. This is not persuasive. Debtor Shu-Chen Wu has provided sufficient testimony to establish her personal knowledge. Debtor Shu-Chen Wu in her declaration has demonstrated that she purchased the Property and personally executed all the transfers of the Property, including the transfer mentioned in paragraph 12. Thus, the Court finds that Debtor Shu-Chen Wu has established that she has personal knowledge of the matters stated in paragraph 12 by her own testimony.

Therefore, the Court is inclined to overrule this lack of foundation objection.

### 2. *Vagueness*

It appears that the vagueness objection directs to the testimony "for a variety of reasons." The Court is inclined to overrule this vagueness objection because Ceron fails to provide supporting legal authority for this objection. Also, this vagueness objection calls for further clarification from Debtor Shu-Chen Wu, rather than striking this testimony.

Thus, the Court is inclined to overrule this vagueness objection.

**Conclusion**

Based on the foregoing analysis, the Court is inclined to STRIKE the following testimony: "[i]n order to take advantage of certain tax breaks" in paragraph 11 of Wu Declaration and OVERRULE the remaining evidentiary objections raised by Ceron as set forth above and GRANT the Debtor's Motion.

###

Date: June 14, 2023

Magdalena Reyes Bordeaux
United States Bankruptcy Judge